UNITED STATES v. CLOETE.

(Circuit Court of Appeals, Fifth Circuit. May 25, 1897.)

No. 566.

1. Customs Duties—Return of Cattle Exported.
   Paragraph 387 of the tariff act of August 27, 1894, permitting entry free of duty of "articles the growth, produce, and manufacture of the United States, when returned after having been exported, without having been advanced in value or improved in condition by any process of manufacture or other means," does not apply to cattle which are exported as young and immature animals, and returned long after fully matured and suitable for market.

2. Same—Increase of Cattle Taken across Boundary.
   Paragraph 373 of the tariff act of August 27, 1894, providing that cattle driven across the boundary line into a foreign country for pasturage pur-

poses may, together with their increase, be brought back free of duty, does not apply to the increase of animals transported by railroad far into the interior of a foreign country for the stocking of a ranch.

Appeal from the Circuit Court of the United States for the Western District of Texas.

This was an appeal by A. J. Cloete from a decision of the board of general appraisers affirming the action of the collector of customs denying the claimant's right to enter certain cattle free of duty. The circuit court reversed the decision of the board, and the United States appealed.

Robt. U. Culberson, for the United States.

Winchester Kelso, for appellee:

Before PARDEE and McCORMICK, Circuit Judges, and NEWMAN, District Judge.

McCORMICK, Circuit Judge. We reverse the judgment of the circuit court in this case. The record shows that Cloete Bros. purchased in Texas, in the year 1887, three herds of cattle, and a fourth herd in the year 1889, and exported these cattle, immediately after the purchase thereof, out of the United States to their ranch in Mexico, distant 70 miles from Eagle Pass. Two of the herds exported in 1887 were shipped by rail; the number of each, or the aggregate number of both, is not given in the record. The third herd was driven on foot, and the fourth herd, exported in 1889, was shipped by rail. There were about 4,000 head in the third of these herds, and 2,500 head in the fourth. One of the export manifests, embracing part of this fourth herd exported in 1889, and being about one-half of the export shipment made in that year, embraced 235 female cattle 1 year old, 10 cows, and 1 calf. It also embraced 322 yearling steers, and 200 steers from 1 to 4 years old, and 517 steers 2 years old. All of these cattle were put in an inclosed pasture at Sabinas, in the state of Coahuila, Mexico. They have been kept separate, and have never been mixed or inbred with any other cattle. It was the intention of the exporters, Cloete Bros., to import into the United States the steers thus exported, when they were old enough for market, and to import the cows, and, we presume, the yearling heifers, when they were too old to breed, and from time to time to import into the United States of the increase of the female cattle the steers when they were old enough for market, and the heifers when they were too old to breed. In January, 1891, about 350 head were thus imported, and in November, 1894, about 1,500 head were thus imported from the Cloete ranch, at Sabinas, and were admitted into the United States free of duty. On April 3, 1895, Mr. A. J. Cloete imported from the Cloete ranch, and entered at the port of Eagle Pass, by entry No. 1,328, 111 cows and 429 beeves, and, by entry No. 1,329, 199 cows, 1041 beeves, and 52 bulls, which animals he declared, under oath before the United States consul at Piedras Negras, Mexico, were exported from the United States on or about the 1st of April, 1887, and that they were cattle of the raising of the United States, and had not been advanced in value or improved in condition by any pro-

cess of manufacture or other means, and that it was intended to re-ship the same to the port of Eagle Pass, Tex. He made oath upon his entry at Eagle Pass that the articles of merchandise therein were the growth and increase of the United States, and that they were truly exported and imported as therein expressed, and that they had not been advanced in condition or increased in value by any process of manufacture or other means. In the oath upon entry No. 1,329, he added, after the word "exported," the words "by the owner exclusively for grazing purposes." There is no other allegation or claim in either entry to the effect that the same were estrays, or that they had been driven across the boundary line for pasturage purposes. He claims free entry for 111 cows, 214 beeves or steers, included in entry No. 1,328, and 197 cows, 52 bulls, and 521 beeves or steers included in entry No. 1,329, as products the growth of the United States, under paragraph 387 of the tariff act of August 27, 1894. He also claims free entry, under paragraph 373 of the act, for 215 beeves, included in entry 1328, as the increase of domestic cattle which were born in the United States, and there purchased by Cloete Bros., and driven across the boundary of the United States into Mexico, for pasturage purposes, and alleges that the cattle of which these are the increase were so purchased and driven during the years 1887–1891. He also makes a similar claim to that of the last mentioned for 520 of the beeves or steers included in entry No. 1,329.

The language of paragraph 373 of section 2 of the act of August 27, 1894, is as follows:

"Any animal imported specially for breeding purposes shall be admitted free: provided, that no such animal shall be admitted free unless pure bred of a recognized breed, and duly registered in the book of record established for that breed, and the secretary of the treasury may prescribe such additional regulations as may be required for the strict enforcement of this provision. Cattle, horses, sheep, or other domestic animals which have strayed across the boundary line into any foreign country, or have been or may be driven across such boundary line by the owner for pasturage purposes, together with their increase, may be brought back to the United States free of duty under regulations to be prescribed by the secretary of the treasury."

The last provision of this paragraph 373 does not appear in previous acts.

So much of paragraph 387, permitting entry free of duty, as bears upon this case, is in the following language, to wit:

"Articles the growth, produce, and manufacture of the United States, when returned after having been exported, without having been advanced in value or improved in condition by any process of manufacture or other means."

This provision of paragraph 387 is substantially the same as has been in force since the passage of the act of March 3, 1883, and as the first provision of paragraph 493 of the act of October 1, 1890, was in force when the ruling of the treasury department referred to (No. 13,922) was made, on April 17, 1893. That ruling, as expressed in the letter of the assistant secretary, was to the effect that, where the value of animals has been increased by natural growth, it does not appear to militate against the privilege of free entry, inasmuch as such increase of value is not effected "by any process of manufac-

ture or other means." The case on which this ruling was made is shown by the letter to have been as follows: One M. W. Hill, of Plessis, N. Y., moved to Canada temporarily in 1891, taking his effects, among which was a colt, and, having completed his work in Canada, he returned the colt to Virginia, on which was assessed, at the port of entry, an import duty of $30. The colt was only a few months old when taken to Canada, and was two years old when returned to Virginia. This ruling (and possibly similar rulings of the department, not accessible to us, but doubtless made in cases similar to the Hill Case) is relied upon in this case as the settled construction by the executive department of the provision in question.

The ruling of the general appraisers (No. 3,029), rendered April 1, 1895, on the last provision of paragraph 373, is to the effect that a fair construction of this paragraph indicates that it was the intention of congress to permit cattle to be driven across the boundary line, and to be brought back again, together with or accompanied by their young, but that it was not the intention to allow cattle the product of foreign farms and ranches to be imported free, because the stock is descended from animals which have been exported from the United States. Opinion by Lunt, General Appraiser, 1605 G. A. 3029. When this case was before the board of United States general appraisers on appeal by the claimant, that board, in rendering its decision against the claimant, used this language:

"We are further of the opinion that paragraph 387 cannot apply to cattle which are exported as young and immature animals, unfit for the market, and are returned long after, as animals fully matured, suitable for market. Indeed, it may well be doubted whether paragraph 387 applies to other than inanimate objects. In this case we are constrained to hold, upon the facts shown, that the animals claimed to be entitled to free entry, under paragraph 387, are not exempt from duty; and that the animals claimed to be entitled to free entry under paragraph 373 are not the increase of cattle which had been driven across the boundary line for grazing purposes now returned, together with their increase. The language of paragraph 373 indicates that the cattle therein provided for are such as are driven across the boundary for temporary pasturage, and the increase thereof incident to such temporary stay, when the young animals would follow the parents upon their return; and, in our opinion, it does not provide for animals transported by railroad far into the interior of a foreign country for the stocking of a ranch."

The case of Morrill v. Jones, 106 U. S. 466, 1 Sup. Ct. 423, arose under a provision of section 2505 of the Revised Statutes of the United States, which was taken from the act of February 8, 1875, and is in these words:

"Animals, alive, specially imported for breeding purposes from beyond the seas, shall be admitted free upon proof thereof satisfactory to the secretary of the treasury, and under such regulations as he may prescribe."

The regulations prescribed by the secretary of the treasury sought to confine the operation of the provision to animals of superior stock. The supreme court held that that object of the secretary could only be accomplished by an amendment to the law. This provision, with the omission of the word "alive" and the words "beyond the seas," was carried forward into the act of March 3, 1883, and was re-enacted in the act of October 1, 1890, with provisos to effect the object sought to have been attained by the regulations of the treasury.

It is manifest, from a review of all the authorities bearing on the subject, that there has been no settled interpretation by the treasury department of the terms of these provisions of the revenue laws upon which the claimant in this case can repose for the construction he seeks to put upon the provisions now in force. It does not appear from the record in this case that the claimant is or ever was a citizen or resident of the United States, and it does not appear that he has ever owned or held a ranch within the United States, near the border or remote from it, or that he has at any time been engaged in the breeding of cattle or other stock in this country. It does appear that he and those with whom he is engaged are conducting the business of breeding cattle in the interior of Mexico,—that is to say, 70 miles from the dividing line between the two countries,—for the purpose of importing them into the United States for market. It appears that, in the prosecution of their enterprise, they did, in the year 1887, purchase within the United States a large number of female cattle, and a large number of bulls, which they exported from the United States, and conveyed to their ranch in Mexico, for the purpose of breeding cattle. As said by the board of general appraisers, it is well known that cattle in the latitude of this ranch subsist by grazing; and it requires no argument or illustration to show from the undisputed facts in this case that these cattle were not exported or driven across the boundary line between the two countries for the purpose of pasturage. It is clear to us that the construction placed upon the act as applicable to this case by the board of United States general appraisers is the sound construction, and therefore the judgment of the circuit court is reversed, and the case is remanded, with direction to the circuit court to dismiss the claimant's action.